IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MSC PIPELINE, LLC, a Mississippi                                           PLAINTIFF
Limited Liability Company

V.                                                          CIVIL ACTION NO. 3:13CV152-B-A

MSC PIPELINE, LLC, an Arkansas                                           DEFENDANTS
Limited Liability Company, now known
as LONGHORN CONSTRUCTION, LLC, *et al.*

MEMORANDUM OPINION

Presently before the court is Plaintiff's motion for partial summary judgment. Upon due consideration of the motion, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, MSC Pipeline, LLC, (hereinafter "MSC Mississippi"), entered into an Asset Purchase Agreement ("APA") with Defendants, Longhorn Construction, LLC, Michael Simpson, and Michael Alan Alvey.

Pursuant to the APA, Plaintiff agreed to buy all assets of Defendants' pipeline business including the equipment, contracts, works in progress, and goodwill. The parties agreed on an "Estimated Purchase Price" which was to be calculated according to the book value of the assets at the time of closing, minus any liabilities, plus one million dollars. Using this method of calculation, Plaintiff paid Defendants $3,599,344 at closing.

The parties included a provision within the APA whereby a "true up" process would occur within ninety days of works in progress being completed. According to this provision, Plaintiff would provide Defendants with an adjusted final balance sheet which would include any

1

increase or reduction in the book value based on any changes in the estimated profits from works in progress.  Based on any increase or reduction in the book value, Plaintiff would either owe Defendants more money or, conversely, Defendants would return a portion of the payment received.  This provision allowed Defendants a fifteen-day time frame within which they could make any objections to the adjusted balance sheet.  Pursuant to the provision, if no objection was made, Defendants were "deemed to have accepted" the balance sheet.  If Defendants did make a timely objection, the parties would negotiate in good faith to resolve the dispute.  The parties then agreed to submit the sheet to a mutually agreed upon neutral third-party accounting firm whose determination would be final and binding, if negotiations proved unsuccessful.

In accordance with the terms of the APA, Plaintiff provided Defendants with an adjusted balance sheet indicating a reduction in the book value of the assets.  Specifically, calculations revealed that Plaintiff had overpaid by $795,916.  No objections were made by Defendants within the fifteen-day time period.  In fact, Defendants failed to respond at all, neither indicating approval or disapproval.  After a period of silence, Plaintiff attempted to acquire Defendants' approval in consulting with a neutral third-party accountant.  Plaintiff's attempt failed.

The parties executed Employment Agreements simultaneously with the APA whereby Plaintiff agreed to employ Simpson and Alvey.  MSC Mississippi employed Simpson as its President and Alvey as its Vice President.  Though they were given management roles, the Employment Agreements stipulated their employment was on an at-will basis.  Simpson's and Alvey's employment could thus be terminated at any time as long as they received thirty days' notice.  MSC Mississippi dismissed Alvey after only two weeks as a result of Alvey's arrest for driving under the influence and possession of marijuana.  Simpson's employment lasted a little over five months. MSC Mississippi dismissed Simpson following an incident in which he

incurred a safety violation on behalf of the company. This safety violation caused Plaintiff to lose its one and only client at the time. Neither Alvey nor Simpson were given the requisite thirty days' notice.

On April 26, 2013, Plaintiff filed its complaint in the Chancery Court of Lafayette County, Mississippi, asserting a claim for breach of contract. Defendants timely removed the case to this court. Following removal, Defendants filed a counterclaim against MSC Mississippi, Sean Carothers, CCI Holdings, LLC, and Carothers Construction, Inc., alleging that Counter-Defendants made fraudulent misrepresentations which induced them to execute the APA and Employment Agreements. Further, Counter-Claimants assert claims of breach of the implied covenant of good faith and fair dealing and breach of the employment agreements. They also seek a declaratory judgment in which they ask the court to declare that Defendants are not liable to MSC Mississippi for any alleged breach of the APA. In response to this counterclaim, Counter-Defendants filed an amended complaint containing additional allegations against Simpson. Plaintiffs later filed this motion for partial summary judgment on its claims and Defendant's counterclaims contending the only claims proper for trial are Plaintiff's allegations asserted against Simpson.

STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Courts have placed the burden upon the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a movant has made this showing, the burden then shifts to the non-movant. *Id.* at 324. The non-movant must then demonstrate an existence of specific facts showing a genuine issue proper

3

for trial. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A motion for summary judgment may be granted only if the court finds "no *genuine* issue of *material* fact" has been presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Substantive law will identify which facts are material." *Id.* A fact is material if it "might affect the outcome of the suit," and any facts which would be irrelevant to the potential outcome are immaterial. *Id.* Not only must a fact be material to avoid summary judgment, there must also be a genuine dispute about a material fact. *Id.* A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* The Supreme Court has made it clear that "at the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. The inquiry performed by the trial judge is a "threshold inquiry" of whether a trial is needed. *Id.* at 250. "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

## ANALYSIS

Mississippi law provides three elements that must be met for a party to establish a breach of contract. *Guinn v. Wilkerson*, 963 So. 2d 555, 558 (Miss. Ct. App. 2006). Those three

elements are "1) the existence of a valid and binding contract; 2) breach of the contract by the defendant; and 3) money damages suffered by the plaintiff." *Id.* A proven allegation of fraud in the procurement of a contract destroys the contract, thereby allowing the aggrieved party to avoid the purported agreement and escape being bound by its terms. *Brown v. Ohman*, 42 So. 2d 209, 212 (Miss. 1949).

Plaintiffs in this action allege Defendants have breached the aforementioned APA by failing to comply with the terms of the Purchase Price provision. Defendants do not dispute they have failed to follow the terms of the APA. Instead, Defendants have raised an affirmative defense of fraud, arguing the APA is void and therefore no breach has occurred. Not only have Defendants raised this as an affirmative defense, they have also filed a counter-claim against Plaintiffs seeking damages from the alleged fraudulent inducement. Specifically, Simpson and Alvey allege Carothers represented to them that they would remain in charge of the company after the deal had closed. Simpson and Alvey also allege Carothers promised them that the business would continue to run the same as it had before. According to Simpson and Alvey, they would not have executed these agreements but for these alleged misrepresentations made by Carothers.

Under Mississippi law, a party alleging fraudulent inducement to a contract must plead and prove the following elements: 1) a representation,[1] 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity or ignorance of its truth,[2] 5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, 6) the hearer's ignorance of its falsity, 7) his reliance on its truth, 8) his right to rely thereon, and 9) his consequent and

---

[1] The alleged misrepresentations "must relate to past or presently existing facts, as facts, and cannot consist of promises." *Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co.*, 554 So. 2d 884, 886 (Miss. 1989).
[2] If a claim of fraud is predicated on a future promise, the aggrieved party must prove that the promisor intended, at the time of making the promise, not to follow through. *Crystal Springs*, 554 So. 2d at 886.

proximate injury. *Koury v. Ready*, 911 So. 2d 441, 445 (Miss. 2005). These elements must be established by clear and convincing evidence. *Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 762 (Miss. 2004).

A party's intent may be inferred from the party's subsequent acts following the representation. *Arete Partners, LP v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010). In e-mail correspondence between Carothers and Ray Boggs, an MSC Mississippi employee, Carothers states "in summary we have an excuse and opportunity to push Alan where we need him in a nice way." (Defs.' Ex. 4). Ray Boggs responded "we do have a great opportunity now." *Id.* This e-mail correspondence took place following Alvey's aforementioned arrest. It could be inferred from this correspondence that Plaintiff had been looking for a reason to dismiss Alvey and quite possibly had intended to do so all along. Furthermore, following the purchase of Defendants' pipeline business, Carothers began dismissing experienced pipeline employees and replacing them with employees who had no experience in pipeline work whatsoever. One hire in particular, Ray Boggs, who Carothers apparently put in charge of the business' operations, lacked experience in the pipeline industry. Boggs, though under no executive title like Simpson or Alvey, was allegedly given control over the company which Defendants assert Carothers had promised to them. These acts by Carothers could be interpreted to show that at the time of executing the APA and Employment Agreements, he neither intended to allow Simpson and Alvey to run the business nor intended for the company to run in the same manner as it had before.

Plaintiffs argue they are entitled to summary judgment on both their claim for breach of contract and Defendants' counterclaim of fraud for three reasons. First, Plaintiffs argue Defendants cannot show that they reasonably relied on any misrepresentations because the terms

of the APA and Employment Agreements contradict these alleged misrepresentations. Plaintiffs are correct in asserting a party cannot reasonably rely on a representation when that representation is contradicted by the terms of the written document. *See Ballard v. Commercial Bank of DeKalb*, 991 So. 2d 1201, 1207 (Miss. 2008). The language in these agreements, however, does not unequivocally contradict these misrepresentations.

In the Employment Agreement executed by Simpson and MSC Mississippi, Simpson was "employed by the company as President of the business." In a similar agreement executed by Alvey and MSC Mississippi, Alvey was "to be employed by the company as Vice President of Operations for the business." These positions given to Defendants, as President and Vice President of the company, could be interpreted as consistent with the alleged representations that Simpson and Alvey would remain in control of the business as they had been prior to the purchase. Further, the APA contains language requiring Defendants to "use its best efforts to cause seller's employees to make available their employment services to the buyer on the same or similar terms as such employees have with seller." This language is not inconsistent with Defendants' assertion that Plaintiffs represented that the business would run the same as it had before, specifically with the same employees from the former business. A reasonable juror could find the terms of the agreements to be ambiguous and not entirely inconsistent.

Plaintiffs next argue even if Defendants did reasonably rely on these alleged misrepresentations, they would not be able to submit evidence to prove these alleged representations were made. Plaintiffs point to the merger clause contained in the APA. Plaintiffs are correct in their contention that generally merger clauses prevent introduction of parol evidence. *Grand Legacy, LLP v. Gant*, 66 So. 3d 137, 145 (Miss. 2011). If parol evidence were found to be inadmissible, then Defendants would have no chance of success as they would

7

have no means of proving the alleged fraud. There is, however, an exception to this general rule: an allegation of fraud in the inducement to make the contract. *Brown*, 42 So. 2d at 213. The courts never intended the parol evidence rule to be used as a shield to prevent fraud. *Id.* Accordingly, due to the aforementioned well-recognized exception to the parol evidence rule, Defendants would be permitted to come forth with evidence to corroborate their allegations of fraud.

Lastly, Plaintiffs assert summary judgment is appropriate because Defendants failed to act promptly in pursuing their claim for fraud, essentially arguing waiver. This argument is without merit. The parties executed the APA and Employment Agreements on September 30, 2012. Simpson and Alvey filed a complaint alleging fraud on April 30, 2013, in the United States District Court for the Eastern District of Arkansas.[3] Defendants thus acted on their potential claim within seven months. Mississippi law imposes a three year limitation on claims of fraud. *Stephens v. Equitable Life Assur. Society of U.S.*, 850 So. 2d 78, 81 (Miss. 2003). Because Defendants filed their counterclaim well within the limitations period provided under Mississippi law, it can hardly be said they waived their right to sue by "failing to act promptly."

The court emphasizes that it must view the underlying facts in the "light most favorable to the party opposing the motion." *Diebold*, 369 U.S. at 655. Therefore, though this court seriously questions whether there has been a fraudulent misrepresentation of existing fact, the court will permit this claim to go forward.[4] Defendants, however, are put on notice that they must be able to submit evidence establishing that these alleged representations were made and

---

[3] Defendants initially filed a complaint against Plaintiffs in the Eastern District of Arkansas. Upon learning of the complaint filed by Plaintiffs in Mississippi, Defendants voluntarily dismissed their claims pending in the Eastern District of Arkansas without prejudice, choosing to instead file their claims as counterclaims in this court.

[4] As mentioned previously, under Mississippi law, to establish fraud, the purported misrepresentations "must relate to past or presently existing facts, as facts, and cannot consist of promises." *Crystal Springs*, 554 So. 2d at 886. Mississippi courts, however, recognize an exception to this requirement when a "contractual promise is made with the present undisclosed intention of not performing it." *Id.*

8

that Plaintiffs, at the time of making these alleged representations, had no intention of complying.

The court now addresses Defendants' counterclaim for breach of the implied covenant of good faith and fair dealing encompassed within the APA and Employment Agreements. Defendants contend Plaintiffs acted in bad faith and breached the implied covenant within the APA by "interfering with the operations and management" of the pipeline company by terminating Simpson and Alvey and by reducing the compensation of employees. Defendants further contend that Plaintiffs violated the implied covenant within the Employment Agreements by "hindering and preventing the performance" of Simpson and Alvey.

"All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992). Mississippi, however, does not recognize an implied duty of good faith and fair dealing in employment contracts. *Cothern v. Vickes, Inc.*, 759 So. 2d 1241, 1248 (Miss. 2000). A party acts in good faith when he is faithful to "an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *Id.* A party may demonstrate bad faith by showing "some conduct which violates standards of decency, fairness or reasonableness." *Id.* (quoting Restatement (Second) of Contracts § 205, 100 (1979)). Bad faith requires more than a mere "showing of bad judgment or negligence; rather, 'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *Lambert v. Baptist Memorial Hosp. North-America, Inc.*, 67 So. 3d 799, 803 (Miss. Ct. App. 2011). Further, a party will not be found to have breached the covenant when he "took only those actions which were duly authorized by the contract." *Id.* at 804.

Defendants' counterclaim alleging breach of the implied covenant of good faith and fair dealing contained in the Employment Agreements must be dismissed. Mississippi does not recognize the claim, and it is, therefore, not viable.

The court points out that Defendants are alleging a breach of the very agreements which they contend are invalid due to fraud. The court will assume, *arguendo*, that the APA is valid for the purpose of evaluating the bad faith claim. Plaintiffs have not engaged in any activity which is prohibited by the agreement. Specifically, the APA provides, "the Buyer may offer employment to those employees of the Seller as it may determine upon such terms and conditions as it may determine, *all in its sole and absolute discretion*." (Emphasis added.) Nothing therefore required Plaintiffs to employ anyone; nor were they obligated to compensate employees a specific amount. Pursuant to the APA, these decisions were left solely to the discretion of Plaintiffs. This is undisputed.

Because the actions taken by Plaintiffs were in accordance with the express terms of the APA and because Defendants cannot show any "conscious wrongdoing" on behalf of Plaintiffs, this court cannot find that Plaintiffs have breached the implied covenant of good faith and fair dealing. Accordingly, the court finds Plaintiffs' motion for summary judgment, as it pertains to this claim, should be granted.

## CONCLUSION

For the foregoing reasons, the court finds that Plaintiffs' motion for partial summary judgment as it pertains to Plaintiffs' claim for breach of contract and Defendants' claim for fraudulent inducement should be denied. Furthermore, the court finds Plaintiffs' motion for partial summary judgment as it pertains to Defendants' claim for breach of the implied

covenant of good faith and fair dealing is well taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 6th day of February, 2015.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**